IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**AMY M. ROBINSON**,                                         Case No. 3:13-CV-01644-SU

           Plaintiff,                                         **OPINION AND ORDER**

   v.

**CAROLYN W. COLVIN**,
Commissioner of Social Security,

           Defendant.

SULLIVAN, Magistrate Judge:

     Amy Robinson ("plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Title II disability insurance benefits ("DIB") and Title XVI social security income ("SSI") under the Social Security Act ("Act"). All parties have consented to a Magistrate Judge in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed and this case dismissed.

Page 1 - OPINION AND ORDER

## PROCEDURAL BACKGROUND

On March 19, 2007, plaintiff filed her most recent applications for SSI and DIB, alleging a disability onset date of May 4, 2001.[1] Tr. 121-27, 482. After her applications were denied initially and upon reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"). Tr. 74-83, 87-93. An administrative hearing was held on November 17, 2009, before ALJ Edward Hein. Tr. 33-69. On December 4, 2009, ALJ Hein issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 15-26. After the Appeals Council denied her request for review, plaintiff filed a judicial complaint. Tr. 1-5. On April 6, 2012, pursuant to the parties' stipulation, the Honorable Michael Hogan entered judgment remanding the case for further administrative proceedings. Tr. 575-79. The Appeals Council issued a corresponding remand order on May 10, 2012. Tr. 584-86.

On April 25, 2013, a second administrative hearing was held before ALJ Sue Leise, at which plaintiff was represented by council and testified, as did a vocational expert. Tr. 505-54. On June 28, 2013, ALJ Leise issued another unfavorable decision. Tr. 482-98. Plaintiff subsequently "declined to file exceptions with the Appeals Council" and instead filed a complaint in this Court. Pl.'s Opening Br. 2.

---

[1] Although neither party addresses this issue and there is scant documentation thereof, plaintiff previously applied for SSI and DIB twice, once in 2002 and again in 2005, seemingly based on the same or similar allegedly disabling impairments. *See* Tr.135-36, 482; *see also Epperson–Nordland v. Colvin*, 2013 WL 5774110, *3-4 (D.Or. Oct. 22, 2013) (explaining the process to reopen a prior claim or overcome the presumption of continuing disability where the claimant has successive applications and noting that, ordinarily, the claimant is only entitled to benefits, if found disabled, from the date of the most recent administrative denial). In addition, the record before the Court constitutes nearly 800 pages, but with some incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

## FACTUAL BACKGROUND

Born on July 12, 1975, plaintiff was 25 years old on the alleged onset date of disability and 37 years old on the date of the second hearing. Tr. 121, 125, 510, 496. Plaintiff graduated from high school. Tr. 42, 144, 496. She worked previously as a caregiver, security guard, kennel assistant, fast-food worker, and newspaper carrier. Tr. 158, 546-47. Plaintiff alleges disability beginning May 4, 2001, due to depression, anxiety, obesity, and pelvic, hip, and back pain. Tr. 139.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether

a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First, the Commissioner considers whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have such an impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can perform her past work, she is not disabled; if a claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S FINDINGS

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 485. At step two, the ALJ determined that plaintiff had the following severe impairments: "morbid obesity, trochanteric

Page 4 - OPINION AND ORDER

bursitis, acetabular spurring in hip joints, depression, anxiety, and cervical radiculopathy." *Id.* At step

three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or

equal the requirements of a listed impairment. Tr. 486.

Because she did not establish presumptive disability at step three, the ALJ continued to

evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had

the residual functional capacity ("RFC") to perform light work, as defined by 20 C.F.R. §

404.1567(b) and 20 C.F.R. § 416.967(b), except:

> she can stand or walk about two of eight workday hours. She can occasionally climb
> ramps and stairs. She cannot climb ladders, ropes, and scaffolds. She can
> occasionally balance, stoop, kneel, crouch, crawl, and reach overhead bilaterally. She
> must avoid exposure to extremes of cold, wetness, and humidity. She should avoid
> exposure to hazards, such as unprotected heights and dangerous machinery. She is
> able to remember, understand, and carry out simple, routine tasks or instructions
> typical of occupations with an SVP of one or two. She can have occasional,
> superficial public interaction. She must have the ability to alternate sitting and
> standing without leaving the workstation.

Tr. 488

At step four, the ALJ found that plaintiff could not perform her past relevant work. Tr. 496.

At step five, the ALJ determined that plaintiff could perform a significant number of jobs existing

in the national and local economy despite her impairments, such as electronics worker, electronics

assembler, and mechanical assembler. Tr. 496-97. Accordingly, the ALJ concluded that plaintiff was

not disabled under the Act. Tr. 497.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding her not fully credible; (2) rejecting the lay

statements of Leslie Buckner and Austin Robinson; and (3) improperly assessing the medical opinion

of Richard Kimani, M.D.

Page 5 - OPINION AND ORDER

I.    Plaintiff's Credibility

Plaintiff first contends that the ALJ failed to articulate a clear and convincing reason, supported by substantial evidence, for rejecting her subjective symptom statements concerning the extent and severity of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of symptoms, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity [of symptoms] by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, plaintiff testified that she is unable to work due to "24/7 horrible pain" in her pelvis, tailbone, and back, and "depression and anxieties." Tr. 519-20, 524. Plaintiff explained that she did not received regular medical treatment after being ejected from Dr. Kimani's practice because "they either won't take on a new chronic pain patient or they won't take [the] Oregon health plan." Tr. 520-21. She indicated, however, that she recently reinitiated care at the "Virginia Garcia Clinic although they won't deal with chronic pain and they don't prescribe narcotics." Tr. 520. Plaintiff is a single mother to her two children, ages twelve and 17, both of whom suffer from mental

health issues. Tr. 511, 520, 532-34. As such, plaintiff endorsed spending a significant amount of time caring for her children. *Id.* However, when directly asked by the ALJ what her daily activities are, she stated that she spends most of her time reclining, either watching television or sleeping. Tr. 534-39.

After summarizing her hearing testimony, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that her statements regarding the extent of those symptoms were not fully credible due to her activities of daily living, failure to seek medical treatment or follow her doctors' recommendations, and tendency to exaggerate, as well as the lack of corroborating objective medical evidence. Tr. 489-95.

Notably, the ALJ found that plaintiff's "daily activities reflect a higher level of functioning than alleged in her application and testimony." Tr. 495. Activities of daily living may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). Substantial evidence supports the ALJ's conclusion in the case at bar. Plaintiff, a single parent, cared for her two children on a daily basis.[2] Tr. 412, 426, 432, 732. For instance, she attended her daughter's softball games and practices, transported her children to school and doctors' appointments, and obtained and organized additional services to assist with managing her son's emotional and behavioral problems, including interviewing and hiring a medical aid. Tr. 171, 426, 533, 538, 704, 708, 710, 718-19, 725, 745. In addition, plaintiff used her computer, helped with

---

[2] Plaintiff's son was an infant on the alleged onset date of disability and her daughter was approximately five years old at that time.

cooking and laundry, watched television and movies, played video and board games, shopped, drove, and managed the household finances. Tr. 170-72, 179-81, 533, 535-37, 721. She also hosted weekly Bible study at her home, socialized, and went places with her family, like a baby shower and haunted house. Tr. 700, 707, 712, 714, 720. As the ALJ reasonably determined, these activities are inconsistent with plaintiff's subjective symptom testimony and evince the ability to engage in a limited range of light work. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (court must uphold an ALJ's rational interpretation of the evidence); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming the ALJ's credibility finding where the claimant was capable of "attending to the needs of her two young children, cooking, housekeeping, laundry, shopping, attending therapy and various other meetings every week, and so forth").

Furthermore, the ALJ "considered [plaintiff's] testimony with caution" because there were minimal objective findings to support her complaints of debilitating pain. Tr. 495. In other words, the ALJ found that plaintiff "exaggerated complaints out of proportion to the severity of her impairments." *Id.* "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Rollins*, 261 F.3d at 856 (9th Cir.2001) (citation and internal quotations and brackets omitted). Nevertheless, lack of consistency with the objective medical evidence "is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 680-81. Likewise, a tendency to exaggerate is a legitimate consideration in evaluating a claimant's credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th

Cir. 2001). [3]

Here, as the ALJ noted, the objective medical evidence does not reveal the presence of any significant or severe condition. Numerous imaging studies demonstrated no more than mild findings. Tr. 234, 238, 430, 446-47, 450, 452-53, 457-61. Moreover, in September 2009, plaintiff presented at the emergency room, wherein her treatment provider, Audrey Trainer, D.O., observed "[s]he states she is at her wits' end with the pain, although she is noted to be quite comfortable and is lying on the bed reading a magazine." Tr. 362; *see also* Tr. 754 (medical provider denoting, in January 2013, that plaintiff "claims she has 'never been listened to' and doctors 'just don't understand her'"). Dr. Trainer was unable to identify the source of plaintiff's pain, especially in light of the normal objective findings. Tr. 362-63. Additional findings on other examinations were also essentially normal. Tr. 222-23, 236, 318, 320, 322, 324, 327, 329, 331, 421, 430, 749, 754, 761. In sum, as plaintiff acknowledged in March 2009, although "she is in pain all the time from her back and pelvis," none of her medical providers have "ever given her a diagnosis because [they] can't find a reason." Tr. 421; *see also Page v. Colvin*, 2013 WL 6827915, *4 (D.Or. Dec. 18, 2013) (affirming the ALJ's credibility finding where the claimant had "undergone numerous diagnostic procedures relating to his [pain], including physical examinations, MRIs, CTs, and ultrasounds, but his medical providers have been unable to identify any underlying physical or physiologic abnormalities").

Thus, the ALJ provided clear and convincing reasons, supported by substantial evidence, for

---

[3] Plaintiff does not challenge the ALJ's reliance on the lack of corroborating medical evidence or her tendency to exaggerate. *See* Pl.'s Opening Br. 6-8; Pl.'s Reply Br. 2; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (an "argument [that] was not made in [the claimant's] opening brief [is] waived") (citation omitted); *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) ("ordinarily [the court] will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief") (citation omitted).

rejecting plaintiff's subjective symptom statements. As a result, this Court need not discuss all of the reasons provided by the ALJ because at least one legally sufficient reason exists. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). The ALJ's credibility finding is affirmed.

II.    Lay Witness Testimony

Plaintiff next asserts that the ALJ neglected to provide a germane reason to reject the testimony of her mother, Ms. Buckner, and teenage daughter, Ms. Robinson. Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina*, 674 F.3d at 1114 (citation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. *Id.* (citation and internal quotation omitted).

In May 2007, Ms. Buckner completed a Third-Party Adult Function Report, in which she testified that  plaintiff was "very emotional" and "very unhappy." Tr. 177-84. She also stated that plaintiff only engaged in limited household chores due to "extreme pain and an 'I give up' attitude," and could no longer walk long more than "20 or so ft." or stand for prolonged periods. Tr. 179-82. Ms. Benjamin nonetheless reported that plaintiff was capable of independently managing household finances, driving and riding in a car, playing video and board games, attending regular doctors' appointment, watching television and movies, and working on paperwork. Tr. 180-81. Ms. Buckner and Ms. Robinson also submitted undated letters in support of plaintiff's DIB and SSI applications. Tr. 210-12. These letters generally describe plaintiff as being in pain and overwhelmed, physically as well as emotionally, since the birth of her second child in 2001. *Id.* They also indicate that plaintiff struggled to complete household chores. *Id.*

Page 10 - OPINION AND ORDER

The ALJ afforded "some weight" to Ms. Buckner's May 2007 report "because it has some support in the record [by showing that plaintiff] retains the ability to perform various tasks, such as caring for her children, driving, shopping, using a computer and mail, managing finances, playing games, watching movies, socializing, folding laundry, and performing personal care." Tr. 494. Similarly, the ALJ gave "some weight" to Ms. Buckner's and Ms. Robinson's undated letters because they were also "generally consistent with the record." Tr. 494-95. The ALJ therefore "account[ed] for symptoms suggested by [Ms. Buckner and Ms. Robinson] by limiting [plaintiff] to less than a full range of light work, with specific [additional] restrictions." *Id.* As such, the ALJ did not wholly disregard the lay witness testimony. Nevertheless, plaintiff is correct that, because not all of the limitations described by Ms. Buckner and Ms. Robinson are reflected in the RFC, the ALJ rejected some of their statements without explicitly providing a reason for doing so.

Even assuming, however, that the ALJ erred in this regard, such an error was harmless. *See Molina*, 674 F.3d at 1114-22 ("an ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims") (citation and internal quotations omitted). Ms. Buckner's and Ms. Robinson's testimony is substantively similar to plaintiff's. Indeed, Ms. Buckner's Third-Party Adult Function Report was completed two days after plaintiff's Adult Function Report and utilizes virtually identical language. *Compare* Tr. 177-84, *with* Tr. 168-75. As discussed above, the ALJ provided clear and convincing reasons, supported by substantial evidence, to reject plaintiff's credibility, and these reasons are equally applicable to the lay witness statements. Critically, plaintiff's activities of daily living and tendency to exaggerate, as well as the lack of objective medical findings, erode the credibility of her, her mother's, and her daughter's testimony. *See*

Page 11 - OPINION AND ORDER

*Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (rejecting lay testimony

on same basis as the claimant's discredited subjective reports); *see also* Pl.'s Reply Br. 6. The ALJ's

assessment of the lay witness testimony is upheld.

III.   <u>Medical Opinion Evidence</u>

Lastly, plaintiff contends that the ALJ neglected to provide a legally sufficient reason,

supported by substantial evidence, to reject the opinion of Dr. Kimani. There are three types of

medical opinions in social security cases: those from treating, examining, and non-examining

doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight is afforded to "opinions

that are explained than to those that are not." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir.

2001) (citations omitted). To reject the uncontroverted opinion of a treating or examining doctor, the

ALJ must present clear and convincing reasons for doing so. *Bayliss v. Barnhart*, 427 F.3d 1211,

1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted

by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Id.*

In January 2008, plaintiff initiated care with Dr. Kimani for treatment of her chronic low back

pain. Tr. 333. The record before the Court contains monthly treatment notes from January 2008 to

September 2008. Tr. 316-34. In April 2008, plaintiff informed Dr. Kimani that "she has been unable

to work for the last 7 years due to the severe pain in her pelvis" and requested that he write "a letter

of disability . . . addressed to the housing authority" because "she need[ed] better living conditions

[since] her house had mold." Tr. 326, 328. In May 2008, Dr. Kimani wrote a letter, addressed to the

"Housing Authority of Yamhill County," stating only that plaintiff "has been disabled for the last

7 years and is likely to remain disabled for an indefinite period of time." Tr. 478. Dr. Kimani

subsequently discharged plaintiff from his practice because "he didn't want to take on chronic pain

people [and] was having issues believing that someone young could have so many issues." Tr. 521; *see also* Tr. 392 (medical report from February 2009 indicating that plaintiff was "discharged from Dr. Kimani's practice").

The ALJ afforded Dr. Kimani's disability opinion "little weight" because: (1) "it is vague and inconsistent with the evidence of record"; (2) he failed to "provid[e] specific limitations . . . link[ed] to specific objective findings" and instead "merely stated [plaintiff] is 'disabled' [without] explain[ing] what he meant by the term [or] why he felt she was disabled"; and (3) "[t]he purpose of this letter [was] to help her obtain some sort of housing benefit [which is not sufficient] for the more rigorous purposes of evaluating disability under the Social Security Act." Tr. 493-94.

An ALJ may afford less weight, even where a treating physician is involved, to opinions that are conclusory and not accompanied by explanations or references to clinical findings. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Thomas*, 278 F.3d at 957 (ALJ "need not accept [a medical] opinion [that] is brief, conclusory, and inadequately supported by clinical findings"). Relatedly, an ALJ need not accept a medical opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (affirming the ALJ's rejection of a medical opinion that failed to explain the extent or significance of a condition). An ALJ also "need not accept a medical opinion that is inconsistent with the doctor's own chart notes." *Hogan v. Colvin*, 2014 WL 1744999, *6 (D.Or. Apr. 30, 2014) (citing *Bayliss*, 427 F.3d at 1216).

In this case, substantial evidence supports the ALJ's evaluation of Dr. Kimani's opinion. An independent review of Dr. Kimani's letter reveals that it is brief, conclusory, and without reference

to clinical findings. Tr. 478. Furthermore, both the doctor's own chart notes and the objective

medical evidence reflect that plaintiff's conditions were not as limiting as articulated in his disability

letter. Namely, Dr. Kimani's records document numerous normal objective findings and plaintiff's

subjective complaints, including her reports that "taking the pain medication makes it possible to do

the house work necessary to care for her children." Tr. 316-34. He also repeatedly recommended that

plaintiff "increase her physical activity by walking at least 30 minutes daily" or "swimming three

times a week." *Id.* As discussed above, the objective record does not support plaintiff's allegations

of debilitating pain and there in no medical evidence, outside of Dr. Kimani's opinion, indicating

that plaintiff is unable to perform work consistent with the RFC. Finally, the fact that Dr. Kimani

wrote a letter on plaintiff's behalf to the housing authority is inadequate to demonstrate that she is

unable to work within the meaning of the Act, especially in light of the fact the he ultimately

discharged plaintiff from his care because, amongst other reasons, he did not believe her allegations

regarding her impairments. Tr. 521-22. As such, the ALJ provided legally sufficient reasons,

supported by substantial evidence, for discrediting the opinion of Dr. Kimani.[4] The ALJ's assessment

---

[4] In the alternative, plaintiff argues, for the first time in her reply brief, that the ALJ should have developed the record further in regard to Dr. Kimani. *Compare* Pl.'s Opening Br. 9-11, *with* Pl.'s Reply Br. 5; *see also Bray*, 554 F.3d at 1226 n.7; *Paladin*, 328 F.3d at 1164. The claimant bears the burden of proving the existence or extent of an impairment, such that the ALJ's limited "duty to further develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). Neither the ALJ nor any medical source found the record in this case to be ambiguous or insufficient for proper evaluation. Plaintiff simply failed to introduce any medical evidence regarding her functional limitations as they relate to her ability to engage in sustained work activity. Plaintiff's failure to carry her burden of proof, however, does not equate to an inadequacy or ambiguity in the record. Under these circumstances, the ALJ's duty to more fully develop the record was not triggered. Additionally, to the extent she asserts that reversal is warranted because ALJ Leise relied on the same improper reasons to reject Dr. Kimani's opinion as ALJ Hein, plaintiff's argument is unavailing. Critically, the ALJ's 2009 decision did not provide any basis for rejecting Dr. Kimani's report, beyond

of the medical opinion evidence is affirmed.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED and this case is

DISMISSED.

IT IS SO ORDERED.

Dated this 24th day of November, 2014.


/s/ Patricia Sullivan
Patricia Sullivan
United States Magistrate Judge

---

noting that "the issue of disability is one reserved to the Commissioner," whereas, as discussed
herein, the ALJ's 2013 decision articulated several legally sufficient reasons supported by
substantial evidence. *Compare* Tr. 23, *with* Tr. 494-95.

Page 15 - OPINION AND ORDER